UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD KELLY,

                Petitioner,                    Case Number 08-13777

v.                                                  Honorable David M. Lawson

KENNETH T. McKEE,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Michigan prisoner Bernard Kelly filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions of first-degree murder, two counts of assault with intent to commit murder, and possession of a firearm in the commission of a felony (felony firearm). He was sentenced to prison for life without parole on the first-degree murder conviction and lesser terms of years for the other crimes. The petitioner has listed thirty-eight issues in his habeas petition, which itself casts doubt on the claim that error occurred in the state courts. *See Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012) (where the court observed that "[w]hen a party comes to us with nine grounds for reversing the district court, that usually means there are none"). Here, the petitioner alleges that he was denied his right to due process when the judge refused to conduct a pre-trial evidentiary hearing on the reliability of the eyewitness identifications, he was denied his right to due process by the admission of evidence of prior uncharged crimes, he was denied his right to the counsel of choice when he was forced to proceed to trial with counsel whose representation was affected by conflicting interests, he was denied the right to the possibility of full and fair appellate review when the trial court failed to provide him with the entire pre-trial and trial record and other discovery, the trial judge erred by failing to conduct an

evidentiary hearing on his ineffective assistance of trial counsel claims, he was denied the right to

the effective assistance of trial and appellate counsel, he was denied the right to a fair trial because

of prosecutorial misconduct, and he was denied a fair trial because of cumulative error.  The

respondent has filed an answer asserting that many of the petitioner's claims were not preserved

properly in state court, and all lack merit.  The Court agrees that the petitioner's claims are meritless;

therefore, the petition will be denied.

I.

The petitioner's convictions followed a jury trial in the Wayne County, Michigan circuit

court.  The facts of the case, as derived from the trial testimony, were summarized as follows by the

state appellate court on direct appeal:

> Defendant was convicted of killing his three-year-old daughter, Stefanie Belue, and of shooting his daughter's two daycare providers, Sherita Griggs and Annette Rice. Griggs and Rice, both of whom were shot several times, each survived.
>
> At trial, the prosecutor presented evidence that defendant reacted angrily when he learned that Stefanie's mother was pregnant.  Defendant did not want her to have the child and explained that he did not want any more children.  Defendant thereafter broke off his relationship with Stefanie's mother.  After Stefanie was born, Stefanie's mother did not initially seek child support and defendant had very little involvement with the child.  However, in April 2004, Stefanie's mother decided to seek child support from defendant.  According to Stefanie's mother, defendant was opposed to paying child support and did not want the issue of child support to be handled through the courts because he believed that the recommended child support payments were too high.  A court hearing on the issue of child support was scheduled for the afternoon of September 28, 2004.  The instant offense was committed on the morning of September 28, 2004, at the home of Stefanie's daycare providers.  The prosecutor also presented evidence that, at the time of the offense, defendant was engaged to one woman, but was seeing several other women at the same time, none of whom knew about Stefanie or another child that defendant had fathered.
> . . .
> Defendant . . . argues that the trial court erred in admitting evidence that he reacted angrily when another woman, Charity Smith, became pregnant with defendant's child, that defendant told Smith that he did not want and could not afford another child, that defendant threatened to kill Smith and her child if Smith went through

-2-

with the pregnancy, that defendant became very belligerent when Smith subsequently asked defendant for support money, and that Smith suspected defendant as the person involved in an earlier incident in which Smith was shot several times.

. . .

Smith testified that she received a threatening telephone call from defendant in which defendant cursed at Smith, complained about child support, and said that he was going to "get" Smith and the child. According to Smith, she was shot seven times when someone fired a gun through her bedroom window approximately 20 minutes after the threatening telephone call. Smith did not see the shooter, but believed that defendant was responsible.

. . .

In a second supplemental brief, defendant argues that Evern Charleston and Cora Ivey were both coerced into giving false testimony at trial to discredit defendant's alibi defense. Defendant contends that defense counsel was ineffective for not raising this issue at trial. We disagree.

Charleston and Ivey both gave prior statements to the police that tended to support defendant's alibi defense. Specifically, both individuals told police that that [*sic*] defendant was working out in a gym at the time the offense was committed. At trial, however, Charleston testified that he saw someone who looked like defendant at the gym, but was not certain the person was defendant. Similarly, Ivey testified at trial that she recalled seeing defendant at the gym on the morning of the offense, but was uncertain about the time of day he arrived.

*People v. Kelly,* No. 261936, 2006 WL 3613638, at *1, 4, 7 (Mich. Ct. App. Dec. 12, 2006).

The petitioner raised ten claims on direct appeal. The Michigan Court of Appeals affirmed the convictions. *Ibid.* The state supreme court denied leave to appeal. *People v. Kelly*, 478 Mich. 870, 731 N.W.2d 716 (2007).

After the petitioner filed his habeas corpus petition in this Court, he was allowed to return to state court to file a post-conviction motion while the Court held the petition in abeyance. The post-conviction motion for relief from judgment was denied, and the state appellate courts denied the petitioner leave to appeal. *People v. Kelly*, No. 301023 (Mich. Ct. App. Oct. 5, 2011), *lv. den.* 493 Mich. 937, 826 N.W.2d 716 (2012). He then returned to this Court and filed an amended petition for a writ of habeas corpus.

-3-

In his original and amended petitions, the petitioner seeks habeas relief on thirty-eight grounds, some of which can be grouped together as follows:

I.      [Direct appeal Issue 2.] Petitioner was denied due process by the trial court's refusal to hold a *Wade* hearing on the capacity of the witnesses to a photo lineup to accurately make an identification.

II.     [Direct appeal Issue 4.] Petitioner was denied his right to due process when evidence of prior, uncharged crimes were admitted into evidence.

III.    [Motion for Relief from Judgment (Motion) Issue 1.]  Petitioner was deprived of his right to counsel of his choice when the court failed to follow procedure in determining whether defense counsel should be allowed to withdraw from the case.

IV.     [Motion Issue 2.]  Petitioner was denied his right to the effective assistance of counsel when he was forced to proceed to trial with counsel whose representation was affected by conflicted interests.

V.      [Motion Issue 9.]  Petitioner was denied due process where the court failed to provide adequate pretrial/trial record occurrences which precluded the possibility of full and fair appellate review.

VI.     [Motion Issue 10.] Petitioner was denied of his right to due process when the trial court erred by denying his motion for a new trial without an evidentiary hearing.

VII.    [Direct appeal Issues 1, 5, 7, 8.]  Petitioner was denied due process by multiple instances of prosecutorial misconduct.

VIII.   [Direct appeal Issue 9, Motion Issue 5.] The prosecutor improperly withheld evidence favorable to the defense.

IX.     [Direct appeal Issue 10, Motion Issue 11.] Petitioner was denied of his right to due process where the cumulative effect of the errors committed at trial deprived him of a fair trial.

X.      [Direct appeal Issues 3, 6, Motion Issues 2, 4A-4M.]  Petitioner was denied the effective assistance of trial counsel.

XI.     [Motion Issues 6, 7, 8.] Petitioner was denied the effective assistance of appellate counsel.

As noted above, the respondent filed an answer to the petition arguing that many of these claims ought not be reviewed because the petitioner failed to preserve them by not objecting at trial, by not raising his claims on direct appeal, or by abandoning his claims. A procedural default, however, is not a jurisdictional bar to review of a claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Because the petitioner's claims lack merit, the Court proceeds directly to the merits.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Kelly filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal

-5-

quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

The petitioner first contends that the trial court should have granted him a pretrial evidentiary hearing as described in *United States v. Wade*, 388 U.S. 218 (1967), to challenge the reliability of the pretrial identifications made by Sherita Griggs and Annette Rice. He did not identify any pretrial identification procedures that he believed were unduly suggestive. Instead, he argued that their medical conditions causing the women to be hospitalized for their gunshot wounds made their pretrial identifications unreliable. The petitioner's trial counsel moved for such a hearing, but the trial judge denied the motion. On appeal, the court of appeals concluded that the trial court did not err in refusing to conduct an evidentiary hearing on the surviving victims' identifications of the petitioner, because the petitioner did not challenge any pretrial identification procedure as being unduly suggestive. *People v. Kelly,* 2006 WL 3613638, at *3.

The Due Process Clause requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, --- U.S. ---, 132 S. Ct. 716, 718 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977) (holding that due process challenges to identification procedures are reviewed using the *Biggers* test).

The evil to be avoided is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. *United States v. Wade*, 388 U.S. 218, 229 (1967). A criminal defendant has the initial burden of proving that an identification procedure used by law enforcement during the investigation was impermissibly suggestive. It is only after a

defendant meets that burden that the court must require the state to prove that the identification was reliable, independent of the suggestive identification procedure. *Id.* at 240 n.31. If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992).

The petitioner never established that Griggs's or Rice's in-court identifications were the product of a suggestive pretrial identification procedure. The trial court, therefore, was correct in refusing the request for a hearing to determine reliability. Instead, the reliability of the identification testimony was for the jury to determine. *See Watkins v. Sowders,* 449 U.S. 341, 347-48 (1981). "[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004). Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." *Perry*, 132 S. Ct. at 730.

The jury was given sufficient information to assess the reliability of the witnesses' identification of the petitioner as the shooter. Defense counsel cross-examined Rice and Griggs at great length about the circumstances surrounding their pre-trial identifications, including their medical conditions at the time of the identification. Rice acknowledged that she had been shot five times, spent two months in the hospital, was on a ventilator, and was receiving pain medications at

-8-

the time of the pretrial identification.  Griggs admitted that she was in the hospital intensive care unit and still receiving pain medications when she made the pretrial identification.  Griggs also acknowledged that she did not remember much from when she was in the hospital.  Counsel also questioned the line-up attorney who attended Rice's pretrial lineup about the fact that Rice was receiving intravenous medications, was on a ventilator, and had a tracheotomy at the time of the identification.  Petitioner's counsel also brought out in his closing argument the fact that Griggs and Rice had identified the petitioner while they were still in the hospital.  The trial judge later instructed the jurors on the factors that they needed to consider with regards to the issue of identification.  The judge previously instructed the jurors that the prosecutor was required to prove the petitioner's guilt beyond a reasonable doubt.  "Given the safeguards generally applicable in criminal trials," which were taken advantage of by petitioner's defense counsel, the introduction of Griggs's and Rice's eyewitness testimony, "without a preliminary judicial assessment of its reliability, did not render [petitioner's] trial fundamentally unfair."  *Ibid.*

Because the petitioner did not show that the pretrial identifications procedures were suggestive, the state courts' determination that no "*Wade* hearing" was warranted reasonably applied federal constitutional law as determined by the Supreme Court.

B.

The petitioner next contends that the trial judge erred by admitting evidence that the petitioner reacted angrily when another woman named Charity Smith became pregnant with his child, that the petitioner threatened to kill Smith and her child if Smith gave birth to the child, that the petitioner reacted hostilely to Smith's requests for child support, and that Smith suspected that the petitioner was the perpetrator involved in an incident in which Smith was shot several times.

-9-

The petitioner claims that the admission of this evidence violated Michigan Rule of Evidence 404(b).

The Michigan Court of Appeals held that the evidence was admitted properly under state evidence law, because it was probative of the petitioner's motive to commit the crimes charged, it shed light on the identity of the perpetrator, and it was relevant to the petitioner's intent. The court also held that the danger of unfair prejudice was minimized by the trial court's limiting instruction to the jury on the use of that evidence. *People v. Kelly,* 2006 WL 3613638, at *4-5. The petitioner did not argue, and the state courts did not address, a federal constitutional issue relating to the admission of that evidence.

An alleged violation of state evidence rule 404(b) is not cognizable on habeas review. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Bey v. Bagley,* 500 F.3d

-10-

514, 519 (6th Cir. 2007). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Bugh*, 329 F.3d at 512-13. Therefore, the Court must deny habeas relief on this claim.

C.

The petitioner argues that he was deprived of the assistance of competent counsel under the Sixth Amendment in several instances. In his third claim, the petitioner argues that his right to the counsel of his choice was violated when the judge refused to allow the petitioner's retained counsel to withdraw from representing the petitioner, instead appointing the same attorney to represent the petitioner at court expense. In his fourth claim, the petitioner contends that he was forced to proceed to trial with an attorney who was laboring under a conflict of interest. In his sixth claim, the petitioner argues that his constitutional rights were violated when the Michigan courts denied his motion to conduct an evidentiary hearing on his ineffective assistance of counsel claims in the manner described by the state supreme court in *People v. Ginther*, 390 Mich. 436, 443, 212 N.W.2d 922, 925 (1973), and Michigan Court Rule 7.211(C)(1). In his tenth claim, the petitioner alleges that he was denied the effective assistance of trial counsel, citing a number of alleged faults. In his eleventh claim, the petitioner contends that he was denied the effective assistance of appellate counsel.

1.

Taking the procedural issue first, it appears that the petitioner first raised his ineffective assistance of counsel claims in his post-trial motion and on direct appeal and asked for an evidentiary hearing. The trial court denied his motion without holding an evidentiary hearing. The

-11-

court of appeals addressed the claims on the existing record and did not remand the case to take evidence.

Federal courts do not provide relief under 28 U.S.C. § 2254 for alleged errors of that type. "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). The Supreme Court has held that states have no constitutional obligation to provide post-conviction remedies. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987). Based on that holding, the Sixth Circuit has reasoned that "habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief." *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001); *see also Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (holding that habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings).

The petitioner contends that the state courts should have held an evidentiary hearing on his ineffective assistance of counsel claims. Even if that were true, such an error in the manner the state court chose to address a post-conviction challenge is not grist for the federal habeas mill. *See Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009). Moreover, there is no clearly established Supreme Court ruling that recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel on direct appeal. *Hayes v. Prelesnik*, 193 F. App'x 577, 584-85 (6th Cir. 2006). The petitioner is not entitled to habeas relief on this claim.

2.

In his third claim, the petitioner contends that he was denied the counsel of his choice when the trial judge failed to replace the petitioner's retained counsel after a breakdown between the two concerning a dispute over the payment of attorney's fees and the quality of trial counsel's

-12-

representation.  Instead, the court appointed the same attorney at court expense to represent the petitioner.  This issue was raised for the first time in the petitioner's post-conviction motion for relief from judgment.

The petitioner argues that his retained counsel visited him in the Wayne County Jail on January 6, 2005 and explained to the petitioner the difficulties he had in preparing for the petitioner's trial due to personal issues and difficulties with obtaining discovery.  Retained counsel also requested additional payment of fees to continue with the representation.  Trial was to commence on January 31, 2005.  The petitioner refused to pay his attorney and informed him of several issues that required investigation.  The petitioner alleges that he informed counsel that because of the breakdown in their relationship, he was not going to pay counsel and asked him to withdraw from the case.  Counsel informed the petitioner that he would move to withdraw from the case and that the petitioner would be brought to court for a hearing on the motion.  The petitioner himself never sent a letter to the judge informing him of the alleged breakdown in the relationship between himself and his trial counsel.  On January 10, 2005, counsel returned to the jail with an order from the circuit court judge appointing him at court expense to represent the petitioner.  A hearing was never held on the petitioner's complaints concerning counsel.

The Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)).  "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid.*

-13-

(quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  However, "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney." *Ibid.*; *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel.  The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

The petitioner's right to counsel of his choice was not violated because he has made no showing that he had the money to retain a new attorney.  Because the petitioner did not show that he had the financial means to hire a new lawyer, the trial court's failure to allow for the substitution of counsel did not violate the petitioner's right to the counsel of his choice.

## 3.

The petitioner also contends that the trial court erred in failing to replace the petitioner's attorney without first conducting an inquiry into the nature of the petitioner's complaints about his counsel.  "A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner." *United States v. Williams,* 176 F.3d 301, 314 (6th Cir. 1999).  Here, there is no evidence that the petitioner ever informed the trial judge of his dissatisfaction with trial counsel.  A defendant wishing to substitute counsel must "bring any serious dissatisfaction with counsel to the attention of the district court." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir.2008).  Because the petitioner never did so, the state court cannot be faulted for not addressing the issue.  *See United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990).

-14-

4.

In his fourth claim, the petitioner contends that his trial counsel was laboring under a conflict of interest due to their disputes over attorney fees and disagreements over trial strategies. This claim also was first presented in the petitioner's motion for relief from judgment. To establish a Sixth Amendment violation where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, a defendant must show that a conflict of interest adversely affected counsel's performance. *Mickens v. Taylor,* 535 U.S. 162, 172-74 (2002). The petitioner not pointed to any part of the record that suggests that the purported fee dispute affected trial counsel's representation of him during trial. In fact, the fee dispute was rendered moot by the appointment of counsel under the state indigency plan. And as the petitioner acknowledged in his state court brief, "[a]lthough a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (citing *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997); *United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir. 1975) (Stevens, J.)). The state trial court reasonably indulged that presumption when denying the petitioner's motion for relief from judgment on this ground, especially in light of the utter absence from the record of defective performance by trial counsel.

5.

In his tenth claim, the petitioner proffers twenty-one allegations of ineffective assistance of trial counsel. Many are repetitive or overlap. To begin, however, it is well established that to succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient

performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. To establish prejudice from counsel's failure to investigate or call a potential witness, a petitioner must show that had the witness testified, "the result of the proceeding would have been different." *Landrum v. Mitchell*, 625 F.3d 905, 921 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).

On habeas review, the petitioner's burden is even greater. The Supreme Court explained in *Richter* that

> [s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123

-16-

(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Ibid*. (citing *Alvarado*, 541 U.S. at 664).

The petitioner first argues that his trial counsel was ineffective by failing to move for the suppression of the identification testimony from Ms. Rice and Ms. Griggs or to challenge their competency, due to their medical conditions, to have made their pretrial identifications.  However, as discussed above, trial counsel actually did move for a "*Wade* hearing" and was refused.  The petitioner's ineffective assistance claim "relates to defense counsel's failure to achieve substantive results rather than a failure to file procedural motions."  *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).  "*Strickland*'s objective standard of reasonableness does not require lawyers to be perfect." *Ibid.*  And, as also noted earlier, trial counsel thoroughly cross-examined the witnesses on their ability to made an accurate identification.  What's more, Antwain White, Sherita Griggs's son, who was present at the day care center at the time of the shooting, positively identified the petitioner at trial as the perpetrator.  Alvette Madison positively identified the petitioner as the man she saw running fast through the median of the road in the vicinity of the day care center at the time of the murder and the shootings.  And there was testimony that the petitioner did not want to pay child support for his daughter and that a hearing on the child support issue was scheduled for the day of the murder, coupled with the evidence that the petitioner had threatened to kill another daughter to avoid paying child support.  Even if trial counsel's performance on this point was deficient — which it was not — the petitioner is not able to establish prejudice.

-17-

6.

As a related claim, the petitioner alleges that his trial counsel was ineffective by failing to challenge the photographic array as being unduly suggestive, either by alleging in a pretrial motion that the photographic lineup was suggestive, or by calling the police officers who conducted the photographic lineups to testify at trial concerning the suggestive nature of the lineup. This argument also was presented in the petitioner's motion for relief from judgment. The trial judge rejected it, expressly finding that the photographic lineup was not unduly suggestive. The petitioner offered no contrary evidence either to the state court or to this Court. It is also worth noting that there is abundant evidence in the record fortifying the reliability of the victims' in-court identifications. Annette Rice testified that she spent 10 to 15 minutes with the petitioner prior to the shooting, immediately identified him in the lineup, and positively identified the petitioner at trial as her assailant. Sherita Griggs testified that she positively identified the petitioner at the photographic lineup as being the shooter. Griggs also positively identified the petitioner in court as her assailant and testified that she had gotten a good look at the petitioner's face at the time of the shooting. Defense counsel's performance cannot be deemed deficient for failing to make futile or meritless motions. *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). The state court, therefore, reasonably applied *Strickland* to this issue.

7.

The petitioner next claims that trial counsel failed to prepare adequately for trial in that he did not consult appropriately with the investigator that counsel had hired to assist the defense. This issue was raised on direct appeal. The court of appeals considered the affidavit of the investigator,

-18-

which criticized defense counsel for certain shortcomings, but found no basis to conclude that prejudice could be shown.  In this court, the petitioner has not suggested how more consultation would have generated beneficial information.  Absent even an attempt at such a showing, the petitioner cannot establish prejudice.  *See e.g. Welsh v. Lafler*, 444 F. App'x 844, 851 (6th Cir. 2011) (rejecting a similar claim where petitioner failed to present sufficiently detailed and convincing account of what additional facts investigator could have discovered in support of the petitioner's innocence).  The Michigan Court of Appeals's finding that no prejudice resulted was a reasonable application of *Strickland*.

8.

The petitioner next contends that trial counsel was ineffective by failing to call alibi witnesses on his behalf.  This issue also was raised on direct appeal.  Two of the proposed alibi witnesses, Evern Charleston and Corey Ivey, did testify at the petitioner's trial, albeit for the prosecution.  Counsel elicited testimony from Mr. Charleston that he had told the police in an initial statement to them that he had seen the petitioner at the Powerhouse Gym on September 28, 2004 between 9:00 and 9:30 a.m. while Charleston was training there.  Corey Ivey testified that while she was working at the gym on the day in question, she witnessed the petitioner come into the gym around 9:00 a.m., although she was not sure that he had signed the sign-in sheet at the time.  At trial, these witnesses expressed uncertainty on whether the petitioner was at the gym at the time of the assaults.  Nonetheless, defense counsel elicited testimony from them in support of the petitioner's alibi.  Moreover, it appears that defense counsel used information obtained from his investigator to cross-examine both individuals.

-19-

The court of appeals rejected the petitioner's claim because the record did not support it, and the court was convinced that counsel performed adequately. Those conclusions are entitled to "double[] deferen[ce]" under AEDPA and *Strickland*. *See Burt v. Titlow*, --- U.S. ---, 134 S. Ct. 10, 13 (2013) (holding that on habeas review of ineffective-assistance-of-counsel claims, the Supreme Court "require[s] that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt") (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Habeas relief is not warranted on this claim.

9.

The petitioner also argues that trial counsel should have called Tracey Poteat to testify that she had filed a personal protection order against Charlity Smith and that Smith had made harassing telephone calls against her after the petitioner was convicted. The petitioner does not explain how this evidence would have been exculpatory. Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004). Because Poteat's testimony would not have exculpated the petitioner, counsel was not ineffective by not calling her to testify.

10.

The petitioner next contends that trial counsel was ineffective by failing to call a pharmacologist, a memory specialist, or a doctor to testify as to the unreliability of Rice's and Griggs's pretrial identifications due to their medical conditions. The petitioner also argues that trial counsel was ineffective by failing to call a gunshot residue expert, and an expert in video image recovery to look at the videotapes from the Powerhouse Gym in order to substantiate the petitioner's

alibi defense.  These claims were presented to the trial court in the motion for relief from judgment.
That court rejected them on both performance and prejudice grounds.

A habeas petitioner's claim that trial counsel was ineffective by failing to call an expert
witness cannot be based on speculation.  *Keith v. Mitchell,* 455 F.3d 662, 672 (6th Cir. 2006).  The
petitioner has offered no evidence that there were any experts in these fields who would have
impeached Griggs's and Rice's testimony or who would have offered exculpatory testimony with
respect to the gunshot residue or the videotape.  The petitioner is thus not entitled to relief on these
claims.

11.

The petitioner next contends that defense counsel did not litigate adequately against the
admission of the prior acts testimony offered by Charity Smith, that the petitioner attempted to
murder his other daughter to avoid paying child support.  The Michigan Court of Appeals found that
the evidence was relevant and admissible to establish the petitioner's intent, his identity, and a
motive to commit the murder.  Counsel challenged the evidence, but did not meet with success.
However, not winning a losing argument does not constitute ineffective assistance.  *Moss v.
Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (holding that an ineffective assistance of counsel claim
"cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if
mistaken").

12.

The petitioner next contends that trial counsel was ineffective by failing to object to certain
instances of prosecutorial misconduct, which is discussed below.  For the reasons stated there, the
Court finds that the prosecutor's conduct did not deprive the petitioner of a fair trial.  To show

-21-

prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that there is a reasonable probability that the proceeding would have been different, had defense counsel lodged an objection. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the Court determines that the prosecutor's comments and questions were not fundamentally unfair, the petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir. 2006).

13.

As a related claim, the petitioner contends that trial counsel was ineffective by failing to object to the prosecutor's statement at the preliminary examination that Annette Rice had positively identified the petitioner at that hearing, even though Rice stated that she could not at the moment see the petitioner because defense counsel was in the way. As mentioned above, Rice positively identified the petitioner at trial. The petitioner does not explain how Rice's rather innocuous statement and the prosecutor's reaction affected the trial, thus, he has failed to show that he was prejudiced by counsel's failure to object.

14.

The petitioner next contends that trial counsel was ineffective by failing to subpoena the bank records of Alvette Madison, who was sitting in the parking lot of her bank on the morning of the murder and observed the petitioner running through the streets by the bank at the time of the murder. The petitioner does not explain how those bank records would have impeached Ms. Madison's testimony. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

15.

The petitioner next claims that trial counsel was ineffective by failing to investigate and prove that telephone records used by the prosecution had been altered to make the petitioner to look guilty.  The petitioner, again, has presented no evidence to establish that those telephone records had been falsified.  The petitioner has failed to show that his attorney was ineffective by failing to investigate the telephone records because the petitioner has failed to show, in light of the other evidence at trial, that such records would establish anything that could have changed the result of his trial.  The state court of appeals, which addressed this claim on direct appeal, did not unreasonably apply *Strickland* in rejecting his ineffective assistance of counsel claim. *See Davis v. Burt*, 100 F. App'x 340, 346-47 (6th Cir. 2004).

16.

The petitioner next contends that his trial counsel was ineffective by failing to move to suppress evidence found in the petitioner's car and home following the execution of a search warrant that he claims was invalid because it was based on cell phone records that allegedly were seized illegally.  To prove that counsel's failure to litigate a Fourth Amendment claim competently amounted to ineffective assistance, the petitioner must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The petitioner has not offered any evidence to establish that the police illegally seized the cell phone records that were used to obtain the search warrant.  Moreover, the only evidence seized as the result of these searches were books that the petitioner had purchased relating to fooling the police and changing one's identity.  There was overwhelming evidence of the petitioner's guilt even

-23-

in the absence of the books. Therefore, there is no reasonable probability that the verdict would have been different had this evidence been suppressed.

17.

The petitioner argues that counsel was ineffective by failing to object to the testimony of a process server, who was the object of intense anger by the petitioner for serving him with Friend of the Court papers in an earlier case. This evidence was relevant and admissible to show the petitioner's attitude toward Friend of the Court matters. The failure to object to relevant and admissible evidence is not ineffective assistance of counsel. *Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003).

18.

The petitioner contends that trial counsel should have objected to the introduction of autopsy photographs. The photographs of the murder victim were most likely admissible to prove the petitioner's intent to kill and the extent of the injuries to the victim. Therefore, counsel was not ineffective for failing to object to their admission. *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455-56 (E.D. Mich. 2004).

19.

In his eleventh claim, the petitioner alleges that his appellate counsel was ineffective by failing to raise on direct appeal the twenty-nine issues that the petitioner raised in his motion for relief from judgment and by failing adequately to move for a *Ginther* hearing on the ineffective assistance of trial counsel claims that were raised on direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). However, appellate

-24-

counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  None of the ineffective assistance of trial counsel claims raised by the petitioner have any merit.  "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of those claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of the petitioner's direct appeal.  Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## D.

In his fifth claim, the petitioner contends that he was denied his right to due process when the trial court failed to provide an adequate pretrial or trial court record, thus obstructing full and fair appellate review.

The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (citing *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)).  Although the Sixth Circuit has recognized the difficulty in demonstrating prejudice where the transcripts are missing, a habeas petitioner must nonetheless "present something more than gross speculation that the transcripts were requisite to a fair appeal." *Bransford*, 806 F.2d at 86.

The petitioner has offered this Court nothing more than speculation that his appellate counsel was not provided with the entire court record or that there was additional information that would have assisted him with his appeal.  Therefore, the petitioner is not entitled to habeas relief on his fifth claim.

-25-

E.

In his seventh claim, the petitioner contends that he was deprived a fair trial because of prosecutorial misconduct. The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, --- U.S. ---, 132 S. Ct. 2148, 2153 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Ibid.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In assessing the petitioner's claims under 28 U.S.C. § 2254, this Court must ask whether the Michigan court's decisions denying the petitioner's prosecutorial misconduct claims "'w[ere] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* at 2155 (quoting *Harrington*, 562 U.S. at 103). And the Court must keep in mind that "the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations . . . .'" *Ibid.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The petitioner argues that the prosecutor committed misconduct by introducing evidence to demonstrate that the petitioner's motive for killing his daughter was to avoid paying child support, and evidence showing the petitioner's consciousness of guilt. The petitioner further contends that the prosecutor made improper statements about the petitioner's financial situation, namely, that he was in bankruptcy. The Michigan Court of Appeals rejected the petitioner's claims, finding that this evidence was all relevant to establish the petitioner's intent, his identity, and his motive to commit the crime. *People v. Kelly,* 2006 WL 3613638, at *1-2, 5.

Although the petitioner has framed these claims as a prosecutorial misconduct challenge, they amount "in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Ibid.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour,* 224 F.3d at 552. The Michigan Court of Appeals concluded that all of this evidence was relevant and admissible. The Sixth Circuit has observed that "the Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012). The petitioner is not entitled to relief on this claim.

The petitioner also alleges that the prosecutor coerced Evern Charleston and Cora Ivey into giving false testimony at the petitioner's trial to discredit the petitioner's alibi defense. To establish a claim of witness intimidation, a defendant must demonstrate "government conduct which amounts to substantial interference with a witness's free and unhampered determination to testify," and must prove that any inappropriate conduct was not harmless. *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997). A defendant who contends that he was denied due process of law by government intimidation of defense witnesses must establish, as a "threshold matter," that the actions of the

government "worked to deprive him of a witness who would have testified on his behalf." *Wynne v. Renico,* 279 F. Supp. 2d 866, 888 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010) (quoting *United States v. Stewart,* 820 F.2d 370, 375 (11th Cir. 1987)).

The petitioner's witness intimation claim fails because there is no showing that either Mr. Charleston or Ms. Ivey were prevented from testifying for the defense. Instead, both witnesses simply chose to testify for the prosecution. That does not establish a witness intimidation claim. *See Johnson v. Bell,* 525 F.3d 466, 480 (6th Cir. 2008). Moreover, because both witnesses testified at trial, both the prosecutor and defense counsel were able to explore the circumstances of their prior statements, in which they indicated that the petitioner was at the gym at the time of the murder. Significantly, defense counsel was able to question Charleston and Ivey about their earlier statements, which exculpated the petitioner. Therefore, the petitioner has failed to show that the prosecutor interfered with a defense witness. *Id.* at 481.

As part of his ineffective assistance of counsel claim, the petitioner contends that the prosecutor committed misconduct by arguing that the petitioner had an issue with women and his female children and for describing the wounds inflicted by the petitioner on his daughter. He characterizes that argument as a misrepresentation of the facts.

A prosecutor's misrepresentation of facts can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to present information that has not been introduced into evidence and that is prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable

-28-

inferences from the evidence. *Ibid.* In the present case, there was an evidentiary basis for the prosecutor's arguments, and therefore her comments were not misconduct.

F.

In his eighth claim, the petitioner contends that the prosecutor improperly withheld exculpatory evidence with respect to certain telephone records. The state court of appeals rejected that claim, finding that defense counsel "admits that he received a copy of the telephone records before trial and that he was aware of the alleged inaccuracies in the records." *People v. Kelly,* 2006 WL 3613638, at *7. The court, citing *Brady v. Maryland*, 373 U.S. 83 (1963), determined that no due process violation occurred because there was no failure to disclose. *Id.* at *8.

That court faithfully applied *Brady*. Suppression by the prosecution of evidence favorable to the defendant upon request violates the Due Process Clause where evidence material to either guilt or punishment of the defendant is withheld, irrespective of the good or bad faith of the prosecution. *Brady*, 373 U.S. at 87. There are three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The petitioner's *Brady* claim fails for several reasons because all of the challenged evidence was disclosed to the petitioner during trial. *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F.3d 398, 421 (6th Cir. 2002) (citations omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the

-29-

defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also United States v. Benc*s, 28 F.3d 555, 560-61 (6th Cir. 1994).

In addition, the petitioner has failed to offer any evidence or argument to show any of this evidence contained exculpatory material, that is, that it was *favorable* to him. The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Conclusory allegations will not do. *See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004). The petitioner is therefore not entitled to habeas relief on his *Brady* claim.

G.

In his ninth claim, the petitioner contends that he is entitled to habeas relief because of cumulative error. The Michigan Court of Appeals rejected this claim on the ground that the petitioner had "not established that any actual errors occurred." *People v. Kelly,* 2006 WL 3613638, at *8. This Court must reject the petitioner's claim because the Supreme Court has never held that cumulative errors may form the basis for issuance of a writ of habeas corpus. *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). The petitioner's cumulative-error claim, therefore, is not cognizable on habeas corpus review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

-30-

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   March 31, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI